**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| SHANNON BENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:18-cv-00042-HEA |
| | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT**

AND NOW, Plaintiff Shannon Benson ("Plaintiff" or "Ms. Benson") files the instant Brief

in Opposition to the Motion for Summary Judgment filed by Defendant Portfolio Recovery

Associates, LLC ("Defendant" or "PRA").  In support thereof, Plaintiff asserts as follows:

### I.    Introduction and Summary of Argument

Shannon Benson's suit against Defendant PRA is predicated on PRA's ongoing campaign

of harassment and harassing telephone calls, which began in January 2017 and continued through

September 2017.  Ms. Benson's claims were asserted under the Fair Debt Collection Practices Act,

15 U.S.C. § 1692 et seq. ("FDCPA").

The recordings and account notes reflect that PRA engaged in coercive practices and put

unrelenting on Ms. Benson, who had recently lost her job and was struggling with financial

insecurity.  In January 2017, Ms. Benson told PRA that she was not comfortable promising

payment from her anticipated tax returns in January 2017.  The recording and PRA's notes reflect

that Ms. Benson became upset and hung up in a call in February 2017.  PRA did not relent for

several more months.  PRA had knowledge the calls were upsetting and that Ms. Benson could not

pay Portfolio, the debt-buyer, while in her dire financial position. PRA nonetheless continued its campaign and called her until September 2017. While PRA would have the Court treat each call as a distinct isolated incident, it is clear that the collection activities was a continuous and ongoing violation of the FDCPA.

Accordingly, Defendant's Motion for Summary Judgment must be denied.

## II. Plaintiff's Counter-Statement of Material Facts

In or around May 2015, Plaintiff Shannon Benson fell upon hard times financially and became unable to make payment on a Maurice's credit card account. (Ex. A, DEF0001.) By the end of 2015, Maurice's had charged the account off. (Id.) In November 2016, Defendant PRA acquired the account as a debt-buyer in hope of collecting some portion of the alleged debt that was previously owed to Maurice's.

In January 2017, PRA began its campaign of harassing telephone calls and coercive collection tactics toward Ms. Benson. On January 18, 2017, when Ms. Benson conveyed that she was unable to male payment, PRA became aggressive and intrusive insisted that she pay from her anticipated tax refund. (Ex. B, recording from Jan. 18, 2017; See Ex. A, acct notes, DEF003.) Benson conveyed that she was uncomfortable with that arrangement and hung up. (Id.) On February 9, 2017, PRA insulted the character and integrity of Ms. Benson by questioning the truth of her description of her experience of financial insecurity and joblessness. (Ex. C, Feb. 9, 2017 recording.) PRA was well aware that it was upsetting Ms. Benson- in fact, PRA's **own account notes,** reflect that Plaintiff "got upset and [hung up]." (Ex. A, DEF003.)

It would be clear to any reasonable person, that the calls were unwanted and upsetting to Ms. Benson. That however, did not deter PRA. In March of 2017, Benson hung up on PRA once more. Despite the repeated signal to stop calling from Benson, from the end of May through

2

September 2017, PRA called Benson at least nine (9) more times with knowledge that the calls were unwanted.  (See Ex. D, List of Calls that Appear to be from PRA, along with Telephone Records from May through September 2017, provided by Sprint in response to subpoena from Plaintiff's counsel.)[1]

In June of 2018, Plaintiff filed suit for this ongoing FDCPA violation.  After the parties engaged in discovery, Defendant filed its motion for summary judgment that is now before the Court.

### III. Argument

#### A.  Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a dispute of material fact exists or is genuine, the court must believe the evidence of the party not seeking summary judgment and draw all inferences from the evidence in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Therefore, a party seeking summary judgment must show by reference to the pleadings, admissions, answers to interrogatories, depositions, and affidavits that there are no material facts truly in dispute in the case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Only after the moving party satisfies this initial burden must the non-moving party present specific evidence that there remains a genuine issue for trial. See Anderson, 477 U.S. at 256.  When reviewing a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any

---

[1] Defendant's account notes do not identify many of the calls that appear in Plaintiff's Sprint telephone records.

inferences that can logically be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). Under the standard of Fed. R. Civ. P. 56, on summary judgment, "the court is required to resolve all conflicts of evidence in favor of the non-moving party." Roberts v. Walmart Stores, Inc., 769 F. Supp. 1086, 1088 (E.D. Mo. 1991).

### B. There Exists a Genuine Dispute of Material Fact Whether Defendant Engaged In Conduct the Natural Consequence of Which

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(a). In order to establish a violation of the FDCPA, a plaintiff must demonstrate that: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. *Id.*

FDCPA claims are viewed from the "unsophisticated consumer" perspective which protects consumers of below average sophistication or intelligence. VanHorn v. Genpact Services, LLC, 2011 WL 4565477 *2 (W.D. Mo.). However, there is an objective element of reasonableness. *Id.*

The FDCPA contains a general prohibitions on "conduct the natural consequence of which is to harasses, oppress, or abuse any person" 15 U.S.C. § 1692d; Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1054 (8th Cir. 2002). In Bingham v. Collection Bureau, Inc., 505 F. Supp. 864 (D.N.D. 1981), which is within the 8th Circuit, where the defendant's collector began pressuring the consumer to part with her belongings (i.e. sell her jewelry) to make payment, the court held

4

the collector's coercion and pressure constituted harassment under 1692d. In Kromelbein v. Envision Payment Sols., Inc., 2013 WL 3947109 (M.D. Pa. Aug. 1, 2013), the court held that derisive statements made with the intent to make the consumer feel poorly could constitute harassment under 1692d.

The elements of a § 1692d claim have all been met here. In the recording from January 18, 2017, Benson was very forthcoming about the fact that she had no money and no source of income. (Ex B.) PRA's collector suggested Benson pay PRA from her anticipated tax return which clearly made Benson uncomfortable (specifically, Benson said "I'm feeling real real real uncomfortable" at 6:55-7:00 of the recording.) Benson stated repeatedly that she would not acquiesce to PRA's proposal and that she did not even know if she was getting a return from the IRS.

On February 9, 2017, PRA's collector placed considerable pressure on Ms. Benson to make payment, despite Benson's explanation that she was out of work and without any available funds. PRA's collector condescendingly "reminded" Benson that "she made a promise". (Ex. "C".) The collector then proceeded to question Benson's character and casted doubt on her explanation that she was out of work. This was highly upsetting to Ms. Benson who genuinely was struggling after a job loss. (Id.) Ms. Benson clearly became upset and hung up after being the target of PRA's condescension and ridicule.

After those calls, Defendant's account notes reflect conversations with Plaintiff in March, May, June, August and September where Defendant continued to pressure Ms. Benson and Ms. Benson hung up and refused to acquiesce. (Ex. A, DEF002.) The provider's telephone records indicate there were substantially more calls than reflected in Defendant's account notes. (Ex. D.)

5

In its Motion for Summary Judgment, Defendant argues that calls before June 18, 2017 are barred by the statute of limitaitons.  (Defendant's Brief, p. 6.)  However, that is simply not the case.  In calls after June 18, 2017, PRA was aware that Benson was "upset" by the calls prior and had coveyed to PRA that the campaign of harassment was unwanted.  That was no a series of discrete incidents, but a single ongoing violation.[i]

Because a reasonable jury could certainly conclude that PRA engaged in conduct the natural consequence of which is to harass and oppress, Plaintiff must have her day in court.  For those reasons, Defendant's Motion for Summary Judgment must be denied.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment must be denied.

KIMMEL & SILVERMAN, P.C.

By: /s/ *Joseph C. Hoeffel*
Joseph C. Hoeffel, Esq.
30 East Butler Pike
Ambler, PA 19002
Telephone: (215) 540-8888
Facsimile: (877) 788-2864
Email:  jhoeffel@creditlaw.com

*Attorneys for Plaintiff*

May 21, 2019

6

CERTIFICATE OF SERVICE


I, Joseph C. Hoeffel, hereby certify that on May 21, 2019, I served the foregoing motion

for protective order and accompanying memorandum and proposed order to the following via

ECF:

Joshua C. Dickinson, #51446MO
13520 California Street, Suite 290
Omaha, NE 68154
Telephone: (402) 965-8600
Facsimile: (402) 965-8601
E-mail: jdickinson@spencerfane.com

Patrick T. McLaughlin, #48633MO
1 North Brentwood Blvd., Suite 1000
St. Louis, MO  63105
Telephone: (314) 863-7733
Facsimile: (314) 862-4656
E-mail: pmclaughlin@spencerfane.com

*Attorneys for Defendant*



By: /s/ *Joseph C. Hoeffel*
    Joseph C. Hoeffel, Esq.

---

[i] Under a continuing violation theory, each new communication begins a fresh statute of limitations period for the claim.  Nutter v. Messerli & Kramer, P.A., 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007)